Good morning, Your Honor. Good morning, Your Honors. May it please the Court. Heidi Holland, Assistant Attorney General on behalf of State Appellants. I'd like to reserve two minutes for rebuttal, please. All right. This Court should reverse the denial of statutory immunity for two reasons. First, as with judicial immunity, absolute immunity focuses on and is defined by the nature of the functions and motive is not part of the inquiry. Second, and importantly here, it is undisputed that the conduct that is attributed to State Appellants occurred while each of them was engaged in the responsibilities they had as instructors and administrators with the Basic Law Enforcement Academy. Counsel, let me ask you this. I'm looking at the District Court's order and the District Judge said that Mr. Cruz showed an ability or that he requires an opportunity to get additional information such as how far defendants departed from their own official training and dismissals. And the District Court specifically said that defendants can renew their partial summary judgment motion after discovery is conducted. So what's happening in the District Court? Has discovery by now closed? Are defendants intending on renewing the motion or has everything stayed pending the resolution of this case? I'm sorry, Your Honor, I didn't mean to interrupt. Yes, everything had been stayed. And I would remind this Court that Ent., which is the only case that has examined this particular statute, was decided on a 12C motion. So in that particular case, there was no examination of curriculum or any other thing. The Court there, it was the Washington Court of Appeals in 2013, held that without question, cadet training fell within the specific functions that were granted to the Commission, and which we have cited in our brief, Your Honor. Clearly, this falls within the statute, so it's 4310-080, list out the authority granted to the Commission, and then additionally, the ability to create rules and regulations, and we've cited to the WAC. The WAC lists, or the Washington Administrative Code, the regulation, lists the different subject areas that can be included. And in this particular case, even taking the allegations at face value from the complaint, every single one of those falls within the regulations. For example... So, I'm sorry to cut you off. Yes. So there's been no discovery since October of last year? That's my understanding, Your Honor. Or October 2021, when summary judgment was issued? Correct. Let me ask you a question. Assume for a moment, if we assume the statute provides absolute immunity, your argument makes a lot of sense to me, which is to say they were acting in, you know, if we were looking at a tort case, even if it was tortious in the scope and furtherance of their employment. But I want to push back on whether the statute imposes absolute immunity. We have only a court of appeals decision in Washington. And the consequence of it providing absolute immunity, it seems to me, would be that even intentional torts committed during the course in conduct by running the academy would be exempted. That's what absolute immunity means. Agreed. Shouldn't we ask the state Supreme Court whether or not that's really what Washington law is? So, if this, if Your Honor is asking whether this should be certified, the answer would be no. So there's... Sure. But you lost. Wouldn't you rather they decide it than us? So, Your Honor, if I may. So, in end, one of the issues was whether... So, yes, obviously the... By the way, I'm an intermediate court judge, as is Judge Wynn. Understood. We love to decide issues, but we recognize that we are an inferior court. So we have this process under which we can just ask the Washington Supreme Court whether the statute confers absolute immunity. My tentative view is that if it does, you should prevail. But I'm less sure when I think about the implications of absolute immunity that it is necessarily correct under Washington law, about which I know little. So, again, why shouldn't we certify it? So I have three points to that. So the first is, in looking at end, one of the issues that the plaintiff in that case posited to the court was whether... The plaintiff had argued that the statute should be read narrowly so as not to include intentional and wrongful conduct. So I understand that the nature of the allegations in that case were different. But the court specifically addressed the concern that Your Honor is addressing here. And it held that the plain and unambiguous language of the court... No, I agree. End, under end, even intentional conduct is covered. Yes. That's not, I mean, if we think end is Washington law, then I think you prevail. So... My question is, given the implications of that, I understand end addressed them and rejected them. But they seem to me pretty consequential. So if I... Why shouldn't we give the high court... If I can, Your Honor... Let me finish. Why shouldn't we give the high court of the state the opportunity to address this issue? Because the legislature has spoken specifically as to the immunity. In end, the court was clearly concerned about what it felt was probably too broad of immunity. And it said, in its opinion, that's not whether we think that is a good decision or not. It is up to the legislature. What you're telling me is we shouldn't certify it because end is correct. Not only do I believe that end is correct, the legislature spoke after the court in end, the court of appeals, invited the legislature to do something about it, to speak. And it did. In 2021, the legislature amended the statute, and the amendments were related to certification. And it could have. It could have added in exceptions. It certainly knows how to do so because there are lots of... Let me ask you this, counsel. I'm going to push back a little bit on Judge Hurwitz's point that if end is the law that you're likely to prevail in this case. Because as I read end, there was really no question that the conduct in that case was really within the scope of official duties. So, right? The allegation was that academy staff ordered him to stand at the ceremony and... And he fainted. Right. And he was injured as a result of that. But the legislature gave the academy broad authority to develop the curriculum that's necessary for its training programs. So, what end said, and I'm reading the very last line of end, because the inspection and ceremony are within the scope of immunized activity, we hold that end can prove no set of facts consistent with this complaint that entitles him to recovery. Right. Now, is there any question that the scope is as broad as to cover racial discrimination or retaliation for reporting misconduct? So, that's conflating two different issues. So, the motive relates to whether or not there is absolute immunity, which is the separate question. And then whether or not the conduct itself fits within the nature of the immunity provided, which is, I think, what Your Honor is asking. And an end, ironically, the plaintiff there argued that graduation did not fall within the protected activity, that a graduation ceremony was not one of the delineated purposes of the commission or training. And I would ask the court to look specifically at... I guess I think we're kind of talking past each other, so I'm not asking the question correctly. As I read the statute, immunities provided for official acts performed in the course of the official's duties. In end, there really wasn't a question that the acts were performed within the course of duties. Now, they may have been negligent, careless, reckless, whatever, right? But it is within the course of duties. That wasn't the question that was really analyzed under end. But here, the allegations, if proven, go beyond the official acts performed in the course of any official's duties. I think you'd have to concede that if he proved his allegations, right, that wouldn't be within the course of duties that the legislature authorized the officials in this case. So, respectfully, Your Honor, I would disagree entirely because there is no dispute that the acts... Right? So, like an absolute immunity analysis is if you remove immunity or, excuse me, motive entirely, the acts himself that he has alleged, and so I would point... If I can sort of see if you can help me on it. Your position is because they had the authority to remove people from the academy, they were acting, this was in the course of their official duties, even if they did so illegally because then immunity covers it. Correct. And so, and it goes, it's more specific than that. And again, if we look just at his complaints, so paragraph 2.41, which is found at ER 193, so he was reprimanded for being out of uniform. Clearly, that's the function that you would anticipate for an instructor at a basic law enforcement academy. So, is there any misconduct by officials at the academy that would fall outside the immunity statute? If any act at all that you can think of? Absolutely. So, for example, if an instructor did something that was beyond the scope of training and certification, an example, and we don't have any such egregious facts listed here, but if an instructor raped a cadet, right, there is no scenario where you can imagine that that would be in the nature of training, which is the way that an immunity analysis, which is what we have here, that's the focus. That's how immunity is defined by the functions. And, Your Honor, you originally asked me a question where you pulled specifically from the statute, right, the acts performed in the course of their duties, and that tracks almost exactly the language from this court in the Ashelman case when it was examining judicial immunity. Like, when you're examining, you look at not the people that did it, who the immunity is attached to, not the associated motive, but the nature of the acts alleged. And here the nature of the acts alleged are him being reprimanded for not storing ammunition properly, him being required to do an obstacle course, him being required to do pepper spray training. All those things with motive removed are the types of acts you would anticipate. But let's suppose you remove motive just as a subjective point, which is your point. I think we don't look to the subjective state of mind, right? Yes, Your Honor. So let's suppose that there are records which indicate that any person of color just is going to be removed, just as a matter of course of conduct. You don't have to look at motive. You just look at what happened. Anytime there's a person of color, for whatever reason, they're out. So, you know, and this is where the sort of certification has a lot of appeal to me, because we're dealing with such a fundamental issue. And it just seems to me that you're always on a continuum when you're looking at conduct. And some of it sort of clearly falls within the purview of even poor training judgment. But sometimes it just may fall outside of that. And drawing that line seems to me to be a difficult one when we could have the ultimate authority decide such a fundamental issue in this case. So just thinking out loud with you. Certainly, Your Honor. And I understand the concern, because anytime there's immunity granted, there are situations where perhaps the person doesn't, I'll use the word, deserve the immunity. And that was examined, for example, even in Forrester, the United States Supreme Court, where the allegations were that the judge had fired the probation officer as a result of her sex. So alleging, again, discrimination. But the United States Supreme Court, again, in this court in Ashelman, when it was reexamining, I believe it was, I'm going to get the case names wrong, but there were two cases that the court reversed, because this court indicated that it was looking at the ultimate acts, the kind of conduct Your Honor is referring to, as opposed to the nature of the acts. Can I interrupt? Maybe in the judicial context, the analysis is a little bit different. And the only reason I raise that is that, you know, as judges, we get thick skinned because we're used to frivolous lawsuits. We're used to all sorts of things that parties or people do that are behaving badly. But here you have a very discreet sort of educational context. And I just don't see the same sort of considerations at play. I don't think every context is the same when you're looking at the idea of this significant concept of immunity. Does that make sense? Yes, Your Honor. I see I'm well over my time. May I just answer that one question? Our questioning took you over time, but I'll give you two minutes on rebuttal. May I answer this question or you would prefer I wait, Your Honor? Why don't you go ahead and wait? Okay, thank you. Good morning, Your Honor. May it please the Court. Nathan J. Arnold on behalf of Mr. Cruz. I'm going to go off my script here, and I apologize, but I want to— We don't have your script, so it doesn't matter. Thank you, Your Honor. I immediately go to the case of Forrester v. White that was just mentioned by counsel. In that case, the judicial officer, a state court judge, actually did not have absolute immunity in the context of a sex discrimination claim. In that holding by the United States Supreme Court, they said that the court applies a functional approach. That is, it analyzes the nature of the functions entrusted with a particular state official and then analyzes whether or not the potential exposure to liability will have a—will have an impact on the appropriate exercise. In that case, the court was in part deciding whether to offer absolute immunity. Let's assume for a moment in this case that the law of the state of Washington, this statute, confers absolute immunity on these defendants. Your Honor— Because—assume it. Certainly, Your Honor. Don't fight it. Okay. Just assume it. Now let me ask my question. Yes, sir. If it is absolute immunity, what they did was discharge someone from the academy, which is in the wheelhouse of their duties. They may have done it for the most illegal reasons in the world, but what absolute immunity means is we never get to the legality of the reasons. So if there's—if this really is an absolute immunity statute—and I know you want to push back on that, and you'll have plenty of time to— but if it really is an absolute immunity statute, I'm not sure why it matters that since they were performing the kinds of duties that they were given under law, which is to say, decide who stays in the academy or not, whether they did it illegally, with terrible motives, in discriminatory fashion, makes any difference. The statute would exempt them from liability. So help me on the second part of the analysis. Certainly, Your Honor. If we make that assumption— Sure. Going back to his honor from California, the CJTC could have a policy, an official policy in place that all people of color— in this case, my client, who is Puerto Rican, despite being discriminated against for an imagined Mexican heritage— but going back to his honors hypothetical, the commission itself could say each person of color must— I absolutely agree with you. So my question is, is that a reason to think that Ent might be wrong or that we might want to certify it? Because if it is—certainly the state of Washington has the power under state law, not under federal law, to immunize officials from any lawsuit, whether it's the most egregious conduct or the least egregious conduct. It has that power under state law. If it exercised that power in this statute, it seems to me you've got a very difficult case. If it didn't or exercised something less than it, maybe you don't have as difficult a case. So now turn to the Ent side and tell me what you think Ent actually held. Certainly, Your Honor. States do have the ability to immunize their officials. Washington State abrogated its sovereign immunity, and I believe it was 1963. They could, of course, pass a new law that gives a specific absolute immunity. I don't believe they have done that here. I don't think that's what Ent says they have done here either, Your Honor. Specifically, if I may— This statute was passed when? This statute was passed in 19—the original chapter that we're dealing with was passed in 1973. The immunity was—excuse me, 74. The immunity was later in time. That's why I don't understand why the abrogation makes any difference. They did abrogate their sovereign immunity, but then they enacted a statute that— Yes, Judge, I agree with that. When we look at the language of this specific statute, though, I don't believe, and I don't think this Court should believe, that it does grant absolute immunity, specifically because it concludes by saying that it is in proceedings or other official acts performed in the course of their duties. So going back to his Honor from California's hypothetical, I would be very concerned if the legislative intent was to draw within the course of their duties any type of racial discrimination or any type of whistleblower retaliation. Now, what the legislature has said is that this chapter and the Commission's purpose is the integrity of our peace officers in this state. Are you against certification, too? I am not against certification, Your Honor. But— It seems to me you're making a great argument for it. I am. However, I will put to the Court that two of the biggest hurdles, both in the state of Washington and our nation at large, to the integrity of our peace officers and law enforcement are retaliation against whistleblowers, that is the blue wall, and racism. We have both here. There is no evidence in this record whatsoever, and I don't believe there is anywhere, that the legislature intended for our Commission to engage in this conduct such that it would come within the scope of its official duties. Well, there's a separate question in this case that neither of you have addressed yet. Is the Commission, QA Commission, QA State Agency, is it subject to the absolute immunity, assuming that there is absolute immunity, or does this only give it to individuals? I believe it is to—I don't know the answer to that question, Judge, actually. That's why I asked it. I don't know. Thank you. I would assume that it is as a body as opposed to the individuals in their individual capacity. That is my assumption. So that takes me to my next question, and this is the one you've been waiting for. Is Ent incorrectly decided? I don't know that Ent is incorrectly decided. I do think that the Supreme Court of the State of Washington is the appropriate body to make that decision. I will point out to Your Honor that we brought this case in state court and the state removed it to federal court. So absent certification, we won't get that answer. However, I don't believe that Ent necessarily results in true absolute immunity. The statute does not say—if the statute stopped before proceedings or other official acts, there's a much better argument for the state to make. But it does qualify itself in the statute by saying it must be performed in the course of their duties. I think that categorically makes it not absolute immunity. So your position is that whenever the act is illegal or tortious or what, it's not in the course of their duties. Tell me what—because lots of people perform illegal acts in the course of their duties. So tell me what takes this act outside the course of their duties that doesn't just destroy any immunity because every case will allege an illegal act. Certainly, Your Honor. I think we go back to Forrester v. White. Under the Supreme Court's decision there, we look at the functions that have been entrusted with the state official. But one of the functions that was entrusted here was to manage who remained in the academy. And Forrester said one of the functions entrusted to the state official there was— they were trying to figure out whether or not it was to fire this—fire or employ this particular person. But here, if I look at functions, this is right in the wheelhouse of their functions. We decide who stays or goes in the state academy. Their decision may have been based on the rankest of motives, but it's their functions—this is right in their functions, isn't it? So I would agree with that, Your Honor. And operating on that assumption, we then go to the second part of Forrester, however. And again, this is binding Supreme Court precedent. And we need to look at whether the exposure to liability or the need for immunity will impact the proper and appropriate execution of those functions. So if the proper and appropriate execution of the functions is, as Your Honor points out, certification, training—which I agree, that's in the statute, it's in the WACs— but if they are given absolute immunity, then they can engage in any type of conduct, including discriminatory. Forrester's not helpful in this respect. Forrester was trying to decide whether, as a matter of judicial construction, we were going to afford immunity. Here we have a statute. So we don't get to decide if it's good policy or bad policy or terrible policy. So I'm not sure we ever get to the second part of that. If this confers absolute immunity and you concede that the legislature could do so, then I'm not sure how we then get to parse whether or not acts that were within their functions were legal, ill-motivated, unconstitutional, or whatever. Well, Your Honor, I think there would have to be some evidence in this record that that's what the legislature intended to do. And we don't have that evidence. But we're trying to interpret a statute and trying to figure out whether Washington courts have already spoken to that. So I think on that, Ent is the most informative, although it's not clear, at least to me, what Ent really means, because I think the factual scenario, the factual allegation in Ent was a lot easier than some of the factual allegations in this particular case in that the conduct in Ent really solidly fell within the scope of official duties. Now the question is, you're raising racial discrimination, misconduct. They're intentional towards arguably falling under the broad umbrella of official duties as well. So the question really is, as the district court suggested, that if you have written policies and there's substantial departure from those policies, and that could give rise to a claim because then that arguably falls outside the scope of official duties, or is it a much broader immunity that would cover that conduct as well? I don't think Ent really provides the answer. And, Your Honor, I would suggest that the statute itself provides the answer where it uses the course of duties language, and then the statute elsewhere defines what the purpose of the statute is. And the allegations that have been made, which are accepted here on this procedural posture, Rule 56, are things that could never fall within the official duties because they are diametrically opposed to the very purpose of the statute. So even under Ent, if we take a plain reading of the statute, the district court was correct and should be affirmed. I, of course, would not object to certification as well, Your Honors. I would prefer it be affirmed and we proceed with discovery. Everyone would prefer to win quickly. But I think this is a very important issue. It has significant impacts on our law enforcement throughout our state. And the position presented by the state here is absolutely contrary to the purpose of the commission and the purpose of the statutes, which is the integrity of our police officers. And if the court finds it appropriate to send this over to the folks in Olympia, I will be happy to discuss it with His Honor there as well. All right. Thank you, Counsel. We've taken you over time. But, Judge Prekerson, did you have a question? No, I just had a quick question. And that is, you know, if we're dealing with a continuum where the analysis on one end may be pretty clear that it's, you know, maybe negligent, maybe poor judgment, but within the scope of, you know, a legitimate training as opposed to something on the other end that one could say, just to borrow from some constitutional standards, would shock the conscience or, you know, be the type of egregious behavior that, you know, you see in the sort of punitive damage context. If one were interpreting this statute in a way that you think, you know, draws a line, what standard would you suggest that would be appropriate to evaluate whether the conduct is still within the sort of official duties or outside of it? Thank you, Judge. I would suggest that where a line needs to be drawn would be where such acts forward or do not forward the purpose of the statute as a whole. And where there are things that fall without the purpose, they therefore fall out of the course of duties, and it harmonizes the entire statute, Your Honor. Thank you very much, Counsel. Thank you, Your Honor. So, Judge Pregerson, when we left off, you had asked me a question that relates to the question you just asked to opposing counsel, this concept of drawing a line. And first, let me say that if I heard correctly, opposing counsel does not disagree that the state appellants acted within their functions, where he says that the line has been crossed is related to motive. And so, Judge Hurwitz, you asked me about the statute itself, and Judge Winn, you asked me about what do we know that the Washington courts would do, and I would like, and this relates also to your question about certifying. So, and is the law in the state of Washington, and specifically the court said that it addresses whether the commission will be held liable for wrongful actions in the course of performing their responsibilities, which opposing counsel concedes that they were acting within their responsibilities as laid out in the statute and the regulations. And then, more importantly, the legislature did come back after Ent. and acted. It could have at that time added exceptions, and what it did instead was reaffirmed the grant of immunity, and it specifically said this general grant of immunity. So whether or not that's a good policy decision is not for the court to decide. That is what the legislature has chosen, and the language that it used in the statute. Well, if we could figure out what the legislature had chosen, that would be an easy answer. So, but it did affirm the language, and what it affirmed was, and it specifically said the generality of the immunity provided, and the language in the statute is very similar to the language in this court's decision in Ashelman, and it specifically, at page 1075 of the opinion, acts in their official capacities, and that was in the context of judicial immunity, but it's the same, it's exactly the same functional analysis. And here, opposing counsel does not contest that the function, what they were doing, that that was outside the scope of their authority. It was why they were doing it, and in an immunity analysis, the why, the motive, is not part of the analysis. If I can, and this is not critical of you, but it may be a message to take back to the Attorney General's office or the state of Washington, I've never understood why a state would remove a case from state court to federal court, particularly when there are interesting state law issues in it. You're entitled to, I'm not criticizing you, but one might pass on to others in the office that it's a particularly perplexing thing. Thank you, Your Honor, and I see I'm over my time. We would just ask this court reverse and remand. Thank you.  For both sides, we appreciate your argument. The matter is submitted. And the next case is H.T. Seattle Owner, LLC v. American Guarantee and Liability Insurance Company.
judges: NGUYEN, HURWITZ, Pregerson